# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THIRTY NINE THOUSAND SEVEN | : | |
| HUNDRED EIGHTY FIVE DOLLARS | : | |
| ($39,785.00) IN UNITED STATES | : | |
| CURRENCY, et al., | : | |
| | : | |
| Defendants | : | NO. 10-1892 |

## MEMORANDUM OPINION

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE                                                      April 26, 2011

      Plaintiff United States of America seeks to admit evidence pursuant to Federal Rule of Evidence 404(b) of a subsequent bad act committed by one of the claimants. Plaintiff contends the evidence is relevant to establish the defendant currency is subject to forfeiture as drug proceeds because the subsequent bad act helps prove the claimant's knowledge of the nature of the currency and his modus operandi in concealing it.

      I will grant Plaintiff's motion. The evidence is relevant and is offered for a proper purpose, see Fed. R. Evid. 404(b), and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice or confusion, see Fed. R. Evid. 403. I also will give the jury a limiting instruction to eliminate any unfair prejudice, including any prejudicial spillover to the other claimant. See Fed. R. Evid. 105.

I.        Factual History[1]

On November 1, 2009, claimants Gabriel Crespo and Samuel Morales were at the Philadelphia International Airport boarding a flight to San Juan, Puerto Rico. The Transportation Security Administration alerted Drug Enforcement Administration officers that Crespo was carrying a large sum of money. Crespo voluntarily produced his wallet containing $6,700 to an officer. Officers then conducted a consensual pat-down and discovered Crespo had additional currency in his pants. Crespo claimed he forgot about the money and said it was not supposed to be there. The officers seized a total of $39,785 from Crespo. Following the seizure, a certified police drug dog positively indicated the odor of narcotics on the currency. Officers conducted a similar search of Morales and recovered $40,126 bundled together and secured by rubber bands.

Approximately ten months after the Philadelphia seizure, government agents at the JFK Airport in New York seized a total of $100,000 from Crespo and two female companions before they departed on a flight to San Juan on August 31, 2010. Morales was already in San Juan when this incident occurred. Crespo admitted carrying $4,000 in his rear pocket, which was bundled in wrappers. Crespo denied having money in his backpack, but a consensual search revealed several bundles of currency secured with rubber bands and bank wrappers and hidden in a T-shirt, totaling $40,000. Following the seizure, a certified police drug dog positively indicated the odor of narcotics on the currency. Crespo did not admit to knowing the nature of the proceeds.

---

[1] For purposes of this motion, the following facts are based on Plaintiff's allegations made at oral argument on April 19, 2011 and contained in its motion in limine, see Plaintiff's Motion in Limine to Permit Admission of Other Acts Pursuant to Fed. R. Evid. 404(b) at 2-6, United States v. $39,785, No. 10-1892 (E.D. Pa. Apr. 1, 2011) [hereinafter Plaintiff's Motion].

Plaintiff seeks to forfeit to the United States $39,785 and $40,126 seized during the Philadelphia incident pursuant to 21 U.S.C. § 881(a)(6), alleging the currency represents illegal drug proceeds or property used to facilitate illegal drug activities. See Plaintiff's Motion. Crespo will testify at trial the currency seized in Philadelphia represented legitimate proceeds from Morales' mother's estate, not drug proceeds.

II.    Discussion

   A.    Legal Standard

Evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence. See Fed. R. Evid. 401, 402. Evidence of "other crimes, wrongs, or acts" is admissible only for certain purposes unrelated to showing that the individual is a person of a certain character. Fed. R. Evid. 404(b). This includes evidence of both prior and subsequent bad acts. See Ansel v. Green Acres Contracting Co., 647 F.3d 515, 520 (3d Cir. 2003) (admitting evidence of subsequent bad act in a civil case). Proper purposes include motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Fed. R. Evid. 404(b). The moving party, however, "must clearly articulate how the evidence fits into a chain of logical inferences, no link of which can be the inference that because the [claimant engaged in certain improper activity] before, he is more likely to have [done so again]." United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992); see also United States v. Rubino-Estrada, 857 F.2d 845, 846-49 (1st Cir. 1988) (Breyer, J.) (evidence of prior drug conviction admissible for the limited purpose of showing knowledge and intent). The evidence must be relevant to an issue other than

3

a person's character to "show action in conformity therewith."  Fed. R. Evid. 404(b); see Sampson, 980 F.2d at 886.

Rule 404(b) is a rule of inclusion, not exclusion.  United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003) ("We favor the admission of evidence of other criminal conduct if such evidence is 'relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.'") (quoting United States v. Long, 574 F.2d 761, 765 (3d Cir. 1978)); United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988).  I may nonetheless exclude relevant 404(b) evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  "Evidence is unfairly prejudicial only if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Bradley, 173 F.3d 225, 230 (3d Cir. 1999) (quoting the advisory committee's note to Rule 403).

To be admissible under Rule 404(b), "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the purpose for which it was admitted."  Sampson, 980 F.2d at 886 (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Huddleston illustrates the proper use of 404(b) evidence.  In Huddleston, the defendant was charged with both possessing and selling stolen videocassette tapes in interstate commerce. 485 U.S. at 682.  The material issue at trial was whether the defendant knew the videocassette

4

tapes were stolen. Id. The trial court permitted the government to offer proof the defendant had engaged in a series of sales of stolen merchandise from the same suspicious source for the limited purpose of showing he knew the tapes were stolen. Id. at 686. The trial court instructed the jury to consider the evidence for the limited purpose of proving the defendant knew the goods were stolen, and not to prove his bad character. Id. at 684.

Similarly, in Rubino-Estrada, the defendant was charged with possessing cocaine with intent to distribute it. 857 F.2d at 846. The material issue at trial was whether the defendant knew of, and intended to distribute, cocaine found hidden in his basement closet along with electronic scales, a ledger book, and money. Id. at 846-48. The trial court permitted the government to offer proof the defendant had been convicted previously of cocaine distribution for the limited purposes of showing he knew the substance found hidden in his closet was cocaine, and he intended to distribute the cocaine. Id. In affirming the trial court's admission of such evidence, the First Circuit described in detail the "non-character-based, knowledge-related inferences" that might flow from evidence of the defendant's prior conviction, culminating in the following:

> [A] person previously involved in cocaine distribution, entering the downstairs closet to find his clothes (as the jury might have thought this defendant sometimes did), noticing the white powder, scales, and box saying "cash" (as the jury might have thought sometimes happened here) is more likely than one not previously involved to think that some kind of cocaine distribution operation is taking place in his house.

Id. at 847-48.

    B.    Admitting the Subsequent Bad Act Under 404(b)

Here, Plaintiff must show by a preponderance of the evidence that there is a substantial connection between the funds seized in Philadelphia and drug trafficking. See 18 U.S.C. §

983(c)(1), (3). To help meet its burden, Plaintiff seeks to admit evidence regarding the currency seizure at JFK on August 31, 2010, claiming it can link the JFK seizure to drug trafficking, and not some other illicit activity. See Plaintiff's Motion. I agree. Evidence of the JFK currency seizure from Crespo is admissible for the limited purposes of showing: (1) Crespo knew the money seized in this case was drug money; and (2) Crespo's modus operandi in smuggling drug proceeds from the United States to Puerto Rico. See Fed. R. Evid. 404(b).

The Government will offer evidence that the cash seized from Crespo at the JFK Airport was concealed in a similar manner as in the Philadelphia seizure, and in both instances a drug-sniffing dog reacted positively to the presence of illegal narcotics. From this evidence, as in Huddleston and Rubino-Estrada, the jury can infer that because Crespo possessed currency linked to drugs at JFK on August 31, 2010, it is more likely that Crespo knew the cash seized under similar circumstances in Philadelphia, and concealed in a similar manner, was also drug-related. Such inferences make it less likely that Crespo's Philadelphia seizure involved an unwitting possession of cash from a legal source. Evidence of the JFK seizure has a tendency to establish Crespo's knowledge of the nature of the currency and help prove he has a specific modus operandi for concealing drug proceeds in a manner to avoid detection by law enforcement.

The probative value of such evidence is high because Crespo alleges the money was not drug-related, but rather proceeds from the estate of Morales' mother. Thus, Crespo's knowledge of the source of the seized currency will be a critical -- and indeed dispositive -- issue at trial. Crespo's involvement in a subsequent airport seizure of drug-tainted currency, under nearly identical circumstances as the Philadelphia Airport seizure, has at least some tendency, see Fed.

6

R. Evid. 401, to make it more likely he knew the currency seized in Philadelphia was drug-related and not proceeds from the estate of his traveling companion's mother.

Further, the probative value is not substantially outweighed by any risk of unfair prejudice,[2] jury confusion, or delay. See Fed. R. Evid. 403. Evidence of the JFK seizure will not cause the jury to decide this case on an improper or emotional basis. See Old Chief v. United States, 519 U.S. 172, 180 (1997); United States v. Cross, 308 F.2d 308, 324 n.23 (3d Cir. 2002). Moreover, any unfair prejudice a jury could discern concerning the bad character of Crespo, as a civil claimant, does not substantially outweigh the evidence's highly probative value on the question of Crespo's knowledge and modus operandi.

Any unfair prejudice or jury confusion from evidence of the JFK seizure, however, will by mitigated by an instruction to the jury limiting its use of such evidence to the issue of Crespo's knowledge and modus operandi. Fed. R. Evid. 105; see United States v. Guerrero, 803 F.2d 783, 786 (3d Cir. 1986) (an appropriate instruction limits any possible prejudice); see also Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (jurors are presumed to follow the instructions they are given); Givan, 320 F.3d at 462. The jury will be advised the evidence may not be used to assess Crespo's character or whether he acted in conformity with it, but may be used to establish only Crespo's knowledge of the currency's source and his modus operandi in concealing currency. See Huddleston, 485 U.S. at 684-85.

---

[2] Evidence is not properly excluded under Rule 403 simply because it is prejudicial, or detrimental to a party's case. See Carter v. Hewitt, 617 F.2d 961, 972, n.14 (3d Cir. 1980). Rule 403 is concerned only with unfair prejudice, which arises when evidence is likely to "cause a jury to base its decision on something other than the established propositions in the case." Id. at 972 (internal quotations omitted).

To further limit any unfair prejudice or undue delay, I also will restrict evidence of the JFK seizure to the amount and type of currency seized from Crespo. No evidence will be permitted on Morales' presence in Puerto Rico at the time of the JFK incident, or concerning the seizure of money from Crespo's accomplices at JFK. Such evidence could unfairly prejudice Morales and also lead to jury confusion and delay since it involves seizures from third parties not involved in this case. Nevertheless, the government will have a sufficient basis to use evidence concerning Crespo's currency seizure at JFK airport to ask the jury to infer that the money seized in earlier in Philadelphia also was drug-related, while avoiding a mini-trial on the JFK incident. See United States v. Abel, 469 U.S. 45, 54-55 (1984) (trial judge can take precautions to diminish the prejudice caused by admitting certain evidence); see also United States v. Jackson, 405 F. Supp. 938, 945 (E.D.N.Y. 1975) (the federal rules contemplate "a flexible scheme of discretionary judgments by trial courts"); cf. United States v. Lehder-Rivas, 955 F.2d 1510, 1518 (11th Cir. 1992) (certain Rule 404(b) evidence, including cocaine conspiracy leader's views on Hitler and his prior experience smuggling drugs, was properly admitted in prosecution for conspiracy to import cocaine, while other evidence, including leader's intention to mark his share of cocaine packages with swastikas, was inadmissible under Rule 403).

The nature of this proceeding further diminishes any risk of unfair prejudice. This is a civil currency forfeiture proceeding against the currency itself, not against a criminal defendant accused of possessing the unlawful currency. This fact diminishes, to some extent, the dangers of the jury misusing evidence of bad character, since Crespo has not been criminally charged and his character is not at issue. Cf. Old Chief, 519 U.S. at 180-82 (noting Rule 404(b) "reflects

[the] common-law tradition" of "'disallow[ing] resort by the prosecution to any kind of evidence of a [criminal] defendant's evil character to establish a probability of his guilt'" due to the risk a jury might convict the defendant for crimes other than those charged) (quoting <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948)).

An appropriate order follows.

BY THE COURT:

<u>/s/ TIMOTHY R. RICE</u>
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge